# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

MAHDI YAQUB,       §
      *Plaintiff*,       §
      §
vs.       §
      §      CIVIL ACTION NO. 3:22-cv-1561
TEXAS A&M COMMERCE,       §
      *Defendant*.       §
      §
      §

## INDEX OF DOCUMENTS FILED IN STATE COURT

|     | PAGES   | DATE      | STATE COURT FILING                                          |
| --- | ------- | --------- | ---------------------------------------------------------- |
| 1.  | 003-022 | 5/23/2022 | Plaintiff's Original Petition                              |
| 2.  | 023     | 6/6/2022  | Plaintiff's letter to the Court requesting issuance of citation |
| 3.  | 024-025 | 6/22/2022 | Citation Issued                                            |
| 4.  | 026-027 | 6/23/2022 | Citation Executed                                          |
| 5.  | 028-034 | 7/18/2022 | Defendant's Original Answer                                |

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief - General Litigation Division

*/s/ Jeffrey E. Farrell*
JEFFREY E. FARRELL
Texas Bar No. 00787453
Assistant Attorney General

Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2120/Fax: (512) 320-0667
jeffrey.farrell@oag.texas.gov

**ATTORNEY FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing document was served upon the following counsel of record *via* the Court's ECF system on the 19th day of July, 2022:

Nicholas A. O'Kelly
Kilgore & Kilgore PLLC
3141 Hood Street, Suite 500
Dallas, Texas 75219
nao@kilgorelaw.com

/s/ *Jeffrey E. Farrell*
JEFFREY E. FARRELL
Assistant Attorney General

FILED
5/23/2022 6:13 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Christi Underwood DEPUTY

DC-22-05483

### CAUSE NO. _____

| | | |
|---|---|---|
| **MAHDI YAQUB,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **TEXAS A&M COMMERCE,** | § | |
| **A DIVISION OF TEXAS A&M** | § | 298th |
| **UNIVERSITY** | § | |
| | § | |
| **Defendant** | § | **____ JUDICIAL DISTRICT COURT** |

## ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW Plaintiff, Mahdi Yaqub ("Yaqub" or "Plaintiff"), complaining of Defendant, Texas A&M Commerce, a Division of Texas A&M University ("Texas A&M" or "Defendant"), and files this his Original Complaint and for causes of action and would respectfully show the Court as follows:

### I.

### INTRODUCTION

1.1     Plaintiff has brought this action for age discrimination, disability discrimination, national origin discrimination, and unlawful retaliation under the ADEA, the ADA, Chapter 21 of the Texas Labor Code, and the Texas Commission on Human Rights Act. Plaintiff alleges that Defendant, through its agents, engaged in a pattern of age and national origin discrimination that has resulted in distinct actions of disability discrimination that are actionable and fall within the jurisdiction of this Court.

1.2     On August 27, 2020, Plaintiff filed a charge with the Texas Workforce Human Rights

Division that claimed unlawful age bias dating back to 2018 and as recently as 2020, and disability and national origin discrimination, and retaliation. Plaintiff's reports were based upon a good-faith and reasonable belief that he had been a victim of a recurring pattern of age, national origin, and disability discrimination and retaliation.

1.3     On March 24, 2022, Plaintiff requested the Texas Workforce Commission Civil Rights Division ("TWCCRD") to issue him a "Right to Sue Letter." On March 27, 2022, the Texas Workforce Commission issued a Notice of Dismissal and Right to File Civil Action and Plaintiff's complaint has been filed within 60 days of the issuance of said notice.

## II.

## PARTIES

2.1     Plaintiff Mahdi is an individual who at all times relevant herein was a resident of Texas. Plaintiff currently resides at 15340 Meadowood Drive, Grand Haven, Michigan 49417, and may be contacted through the undersigned counsel.

2.2     Defendant Texas A&M Commerce is a state and federally funded Division of Texas A&M University, located at 1230 TAMU, College station Texas 77483, and is represented by the Texas Attorney. General's office located in Austin, Texas.

## III.

## JURISDICTION AND VENUE

3.1     The jurisdiction of this Court is invoked pursuant to the Texas Human Rights Act ("TCHRA").

3.2     Venue for all causes of action stated herein lies in the District of Texas because the acts alleged in this Complaint took place in whole or in part within the boundaries of this District.

3.3     Defendant has waived its sovereign immunity from being sued under the

aforementioned statutes because at all relevant times herein and through the present date, Defendant has received and continues to receive state and federal funding.  Consequently, Defendant is not immune from suit and this Court has jurisdiction to hear all claims against Defendant.

3.4     All conditions precedent to this suit have been satisfied, as Plaintiff filed a timely charge of discrimination with the Texas Workforce Commission and received a Notice of Right to Sue on March 27, 2022.

3.5     Defendant has, at all relevant times, employed over twenty (20) employees in the current or preceding calendar year and has waived sovereign immunity under the Texas Human Rights Act.

3.6     Defendant, Texas A&M Commerce, is an employer within the meaning of the Texas Human Rights Act.

## IV.

## FACTUAL ALLEGATIONS

4.1     Plaintiff is 62 years of age. His national origin is Arabic. His religion is Muslim.

4.2     On August 19, 2016, Plaintiff started his employment with Defendant as a Tenure-Track Assistant Professor in the Engineering and Technology Department.

4.3     Plaintiff is an excellent faculty member and at all times has met or exceeded Defendant's expectations.

4.4     Plaintiff's teaching and academic abilities are corroborated by numerous positive reviews from his students.  Plaintiff came to Defendant with an extensive educational background, boasting two engineering Doctorates, two engineering Masters' Degrees, and a Masters' Degree in Business Administration ("MBA"), all awarded from top-tier American universities.  In addition to his education, Yaqub has twenty-three years of senior-level industry practice in engineering and

management experience, including thirteen years at Intel Corporation and two years at NASA. Plaintiff's education and industry experiences were augmented with three years of an academic leadership role as Endowed Pinson Chair Professor (Associate Professor Rank) at San Jose State University.

4.5     During Plaintiff's employment with Defendant, Plaintiff was recognized multiple times for academic leadership awards.  Plaintiff personally received numerous grants from the University for his research, and successfully secured sixteen  industry partnership projects to his department and senior students. Up until Plaintiff's last two weeks prior to his summary termination, Plaintiff received nothing but positive performance evaluations.

4.6     On or about August of 2018, Defendant promoted Andrea Graham ("Graham") to the position of Department Head.  Graham is in her late thirties and is less qualified than Plaintiff.

4.7     Following Graham's promotion to Department Head, Plaintiff began to experience various adverse actions that he now believes were motivated by his national origin, his age, and his disability.  In addition to being 60 years old, Plaintiff suffers from a chronic vision impairment that affects an essential life function.  With a reasonable accommodation, Plaintiff can perform the essential functions of his University job.

4.8     Beginning in August, 2018, Graham began to exclude Plaintiff from various position opportunities within the University and offered those positions to younger, less qualified, Caucasian and Asian colleagues, despite Plaintiff's repeated requests to be considered for the same.

Specifically:

i.      Graham assigned an inexperienced Assistant Professor, Soujung Kim ("Kim"), to the role of Industrial Engineering Program Chair and Advisor without posting the position or informing Plaintiff of this opportunity.  Kim is Korean and in his mid-

twenties.

ii.     After Plaintiff began developing a Six Sigma Certification Program in October, 2018, Graham reassigned the program and its responsibilities to Kim, who was allowed to place his name on the program while Plaintiff's name was excluded.

4.9     During this same time frame,  Graham also announced that Kim would be Plaintiff's advisor, even though Graham knew that Plaintiff had a far superior educational background and substantially more work experience by 23 years.  Graham also knew that Plaintiff held the higher position of Endowed Chair Associate Professor at San Jose State University for three years prior to joining Texas A&M Commerce.

4.10    Plaintiff joined the Department at approximately the same time as three other younger faculty members, Kim, Burchan Aydin ("Aydin", who was in his early-thirties), and Jae Yeon ("Yeon", who is in his mid-twenties).  These three individuals joined the Department fresh out of college with no prior teaching nor industry experience.

4.11    Graham also assigned the Department's responsibilities, curriculum, student advising, and professional organization activities to Kim and Aydin, both of whom are younger than Plaintiff and have no prior academic or industry experience.  Plaintiff had expressed to Graham  both orally and in writing his interest in the student advising and professional organization activities, however, he was not assigned to any of these roles despite his superior experience.

4.12    In late September, 2018, Plaintiff met with Graham to discuss his growing concern that he was not being properly utilized and appeared less useful and valuable to the University due to Graham's assignment of leadership roles to his younger colleagues. Graham promised to take future action to address Plaintiff's concerns, but took no action to help Plaintiff and instead, began retaliating against him.

4.13    In October of 2018, Plaintiff again met with Graham to discuss his concerns regarding her favorable treatment of the younger colleagues. Plaintiff proposed developing a Six Sigma Certification program and a Master's degree program in Engineering in which Plaintiff would have the role of Senior Students' Career and Professional Development Advisor. Graham agreed with this proposal.

4.14    The following week, when Plaintiff followed up on his proposal, Graham stated she assigned the position to Kim and would assign Plaintiff to the Industrial Engineering program curriculum and Chair Faculty Search Committee the following year.  Graham never followed up with Plaintiff on these promises.  Instead, Graham gave both assignments to Aydin and Kim.

4.15    In September, 2019, Kim put his name on the Six Sigma Certification program, which had been entirely developed by Plaintiff.  When Plaintiff reported this to Graham, she admitted that she had assigned Kim the Six Sigma Certification chair.

4.16    Graham refused to provide Plaintiff a graduate assistant for research, while simultaneously providing such assistants to other younger professors.  For example, Aydin was provided with a graduate assistant for research (each paid $30,000 per year) in 2017, 2018, 2019, 2020, and 2021.  Likewise, Kim had a graduate assistant in 2017, 2018, 2019, and 2020.  Finally, Assistant Professor Jae Yeon had a graduate assistant assigned to him in 2020, despite negative student feedback and confrontation with a student.  By contrast, Plaintiff was denied a graduate research assistant during the same five year period.  Graham and Dean Donham ("Donham") also denied Plaintiff leftover funding of only $5,000, despite Plaintiff's status as a peer-elected,  Lead Investigator ("PI") for three high-visibility multi-university research projects.

4.17    Plaintiff endured numerous age-related comments from his younger colleagues.  For example, in March of 2019, Aydin asked Assistant Professor Jae Yeon, approximately in his mid-

twenties and Korean, "how do you like working with an old guy?" This comment was made in front of Plaintiff's office, suggesting that Aydin intended Plaintiff to hear this statement.

4.18    In the fall of 2019, Graham assigned Plaintiff to teach Construction Engineering ("CONE"), a course that Graham knew was outside of Plaintiff's area of expertise.  The assigned course had one section filled with Industrial Engineering majors and the other section comprised of CONE majors.  Plaintiff was unaware and not informed that the CONE students had already covered the material.  Consequently, Plaintiff was put in the position of reteaching material that some of the students had previously covered.

4.19    In October 2019, Plaintiff once again raised his concerns to Graham that he had lost respect in the eyes of the students because of Kim's appointment in which a younger student acted as Plaintiff's superior.  Graham responded, "I assigned him to be your boss."  Later that month, Aydin said to Plaintiff "You should be on a yacht or on the beach, why are you here?" insinuating that Plaintiff was old enough to retire.  Plaintiff did not mention or express any intention of retiring any time in the near future.

4.20    In October 2019, Plaintiff suffered from sudden vision loss, drastically impairing his ability to read.  Everyone in the department was aware of Plaintiff's sudden vision loss. After Plaintiff's vision loss, Plaintiff made three (3) separate requests to meet with Graham to discuss his medical condition and its effect on his job.  Graham never responded to Plaintiff's multiple requests.

4.21    In December 2019, Plaintiff emailed Graham to request that she update his resume and schedule of classes on the University webpage, a routine request that all other faculty members granted.  Graham refused and instead posted a summary version that did not show any of Plaintiff's accomplishments during his previous 3-year tenure (2016 to 2019) at Texas A&M Commerce.

Plaintiff then observed that his profile and picture were removed from the University webpage yet the other younger faculty members' profiles and photos were not removed. Similarly, the webpage excluded Plaintiff's numerous accolades, but included the other younger faculty members' accolades.

4.22    On December 3, 2019, Plaintiff emailed Graham, informing her that he would be missing his class and office hours that day due to a scheduled eye-surgery the following week. Graham did not respond to Plaintiff's email. Plaintiff had two eye surgeries initially scheduled for December 11th, which were delayed to January 22, 2020 and February 5, 2020 due to complications.

4.23    As a result, the CONE students rated him a below average score of 2.93 as opposed to the Industrial Engineering students who gave Plaintiff an above average rating of 3.97. In previous years, Yeon taught the same CONE course and received negative student comments, poor ratings, and engaged in a confrontation with a student. Yeon faced no discipline afterwards and was given a graduate assistant.

4.24    In early January, Graham approved Plaintiff's request for two (2) weeks' time-off to obtain eye surgery.

4.25    In mid-January 2020, Graham, who was well aware of Plaintiff's vison impairment loss and upcoming surgeries, asked Plaintiff, in front of his students, to produce written training material, knowing he could not read at that time because Plaintiff had repeatedly reminded Graham of his impaired vision.

4.26    On January 30, 2020, Graham met with Plaintiff to discuss his 2019 Annual Evaluation Report. The evaluation was positive in all areas. Plaintiff was rated "meets expectations." Graham signed off on the evaluation at the conclusion of the meeting.

4.27    Two weeks later, on February 13, 2020, Plaintiff had just returned from medical leave.  Graham asked Plaintiff to meet with her to revisit his signed evaluation. Graham informed Plaintiff that Dean Brent Donham and Graham had decided to change his tenure evaluation, rating his overall tenure performance as "Partially Meets Expectations."  This change in Plaintiff's rating occurred after the College Tenure Evaluation Committee had recommended that Plaintiff continue his tenure track.  Plaintiff has since learned that Graham intentionally excluded Plaintiff's valuable experience and awards from consideration by the tenure committee in order to promote two other younger professors, who are significantly less qualified, less educated, and less experienced than Plaintiff.

4.28    In addition to lowering his tenure rating, Graham also altered Plaintiff's previously signed evaluation by removing  several of Plaintiff's significant accomplishments that had been listed in the review two weeks earlier.  The net result of these negative adjustments adversely affected Plaintiff's tenure track.  Plaintiff had tried to explain that he had been blind for the better part of the Fall, 2019, but no accommodation was provided to Plaintiff for this perceived disability.

4.29    Plaintiff also noted that the CONE course, which had brought down his overall evaluation, was an outlier.  Plaintiff reminded Graham that he had never taught the course before, it was not a part of his expertise, and was offered by a different Department than the one he was hired to teach. (Plaintiff was hired as an Industrial Engineering faculty but not a Construction Engineering faculty). Graham did not reply to his comments, asking instead that he sign the modified and downgraded evaluation.  Plaintiff asked to meet with Donham before signing as he was blind and did not understand what had changed other than that he received a positive performance evaluation just before his medical leave, and it is changed during his medical leave.

4.30    The following day, on February 14, 2019, Plaintiff met with Donham.  Donham told

Plaintiff that his teaching scores had dropped in Fall 2019 due to the CONE Class. Plaintiff again explained that he had begun having troubles due to his unfamiliarity with the course and his medical condition.

4.31    Donham asked Plaintiff when he started having a medical condition. Plaintiff told Donham that he had lost his ability to read in early October and his overall vision was almost gone. Donham asked Plaintiff who knew about his vision impairment. Donham asked Plaintiff if Graham knew of his vision impairment. Plaintiff explained to Donham that Graham was well aware of his vision impairment and that he had sent her emails informing her of his absences in preparation of his eye surgery, and met with her in early January to fully explain his medical conditions and of the accommodations that he required.

4.32    In response, Donham told Plaintiff it would be better for him to go back to San Jose, California. Plaintiff asked Donham if that meant his contract would not be renewed. Donham did not give Plaintiff a clear response, but told Plaintiff that he would discuss the issue with Provost Humphreys who emphasized research. Donham commented that Plaintiff had just won a sizable and very competitive research grant.

4.33    After the meeting, Donham insisted, through a follow up email, on a signature to acknowledge receipt, and stated in his email, "You have provided your reasons as to why the scores dropped, including a medical condition that no one is challenging."

4.34    On March 16, 2020, the Department awarded four younger faculty $30,000 each to support their research. Plaintiff's earlier request for the remaining funds of $5,000 was denied despite the multiple accolades Plaintiff had received for his research. Out of the fifteen other faculty, Yaqub was the most educated, most qualified, and most experienced, but the least paid. With many (7 out of 15) other of his counterparts holding doctorate degrees in non-engineering

fields,  or only a single Masters' degree, Plaintiff held two doctorates in Engineering.

4.35    During his employment with the University, Plaintiff regularly heard his colleagues make age-related comments about him. The University perpetuated this ageist culture after late 2018 by downplaying Plaintiff's academic efforts and excluding him from the challenging and meaningful work assignments which were instead given to the younger Assistant Professors.

4.36    On March 18, 2020, Defendant notified Plaintiff that he was terminated.  Plaintiff's last active day of employment with Defendant was May 31, 2021.  Plaintiff was subsequently replaced by an Asian individual fresh out of college, and a recent PhD graduate in his late twenties with no prior  experience.  The University's pattern of hiring young recent college graduates as professors evidences the University's age discrimination, and Plaintiff was a victim of this practice.

4.37    Contemporaneously with these events, Defendant had announced a buyout for tenured professors over the age of 60.  Plaintiff was disqualified from this buyout by virtue of the revised performance evaluation that he received in March 2020.

4.38    Plaintiff was denied this offer as a result of the unfair reevaluation which was based upon the same events that contributed to a satisfactory evaluation two weeks previously.  Plaintiff also just received a recent positive recommendation by the College of Science & Engineering Tenure Committee only one semester before his discriminatory termination.  Moreover, Graham intentionally excluded valuable experience and awards from consideration by the Tenure Committee in order to promote younger assistant professors (Kim and Aydin), who are significantly less qualified than Plaintiff, less educated, and less experienced, who were also working on temporary work visas.

4.39    The University gave younger and less qualified professors significantly more pay and raises, than it gave Plaintiff, despite his greater experience, performance and more stringent

workload.

4.40    After Plaintiff filed a discrimination complaint with TWCCRD, Graham and Dean

Donham retaliated against Plaintiff by denying him an inflation related salary increase that every

other faculty member in the department received. Retaliation is evident as Plaintiff was denied an

inflationary salary increase despite receiving the highest teaching evaluation scores among

engineering faculties, the only faculty in the department to win a significant external research grant

and authoring two publications that year.

4.41    Plaintiff has also faced excessive differential treatment on account of his national

origin, Palestinian.   Dean Donham and Graham have treated Plaintiff differently, repeatedly

demonstrating a preference for American, Caucasians, and Korean faculty.   Upon hire, Plaintiff

replaced Dr. Horton, an American professor. Dr. Horton taught senior-level courses in industrial

engineering and had industry experience similar to Plaintiff's.   However, Plaintiff was more formally

trained, holding two doctorates and three master's degrees.   Furthermore, Horton was granted the

title of associate professor despite TAMUC's refusal to give him tenure. Upon hire, Donham paid

Plaintiff less and appointed him to a lower rank than Horton.

4.42    Currently, of the fifteen in his Department, Plaintiff is the most educated, qualified,

and experienced, but somehow the least paid. Currently, of the five American faculty, Davis, Smith,

Moler, Carter, and McAnally, all have no recent research activities or publications and have not been

terminated.   Moler's background is not engineering as his Ph.D. is in Human Resource Management.

Likewise, Davis is an associate professor in the Engineering & Technology Department with a Ph.D.

in Human Resources. Smith's doctorate is in Business (OBA). McAnally has a doctorate in

Education, and Carter has a Master's degree.   Additionally, Yoen (Korean, and in his mid-twenties)

has a PhD in Architecture, but not in Engineering, and Dean Donham (Dean of College of Science

and Engineering) has a Doctorate in Education, but not in Engineering or Science. All are paid more than Plaintiff.

4.43    Furthermore, Dr. Yeon, a Korean professor, faced no discipline or threats to his employment as a result of receiving bad student comments and scores, in addition to his having a confrontation with a student.  Despite these lax takes on the rules for these American and Korean professors, Plaintiff was terminated. There is no substantial difference between his professional record and the others other than his higher years of experience, education, and successful research efforts.  As such, Plaintiff has clearly faced intentional discrimination on the basis of his national origin.

## V.

## CAUSES OF ACTION

## First Count

## Age Discrimination In Violation of Chapter 21 of the Texas Labor Code

5.01    The foregoing paragraphs of this Complaint are incorporated in this Count by reference as if set forth at length herein verbatim.

5.02    At all times relevant herein, Plaintiff was in the protected age bracket and meeting Defendant's expectations.

5.03    Defendant has discriminated against Plaintiff by discriminating against him due to his age with respect to the terms and conditions of his employment by:

> a. Treating Plaintiff differently by giving preferential treatment to younger, less experienced individuals;

> b. removing Plaintiff from his tenure track despite recent positive recommendation by the College Tenure Committee; and

c. terminating Plaintiff's employment and replacing Plaintiff with significantly younger employees.

5.04    Defendant's conduct violated Chapter 21 of the Texas Labor Code which prohibits age discrimination.

5.05    Defendant intentionally engaging in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*

5.06    The acts of age bias and favoritism described above occurred within 180 days prior to the filing of Plaintiff's charge of unlawful discrimination.

5.07    Although not the only action, Defendant's conduct demonstrates an historic pattern of unlawful age bias that manifested itself in the form of deliberately ignoring Plaintiff's accomplishments, and not considering Plaintiff for assignments that Defendant gave to younger, less qualified individuals ultimately terminating Plaintiff's employment.

5.08    All conditions precedent to filing this action for discrimination under Chapter 21 have been met.  Plaintiff timely filed his charge of discrimination on the basis of age disability and retaliation.

5.09    Plaintiff received a Notice of Right to Sue within the 60 days prior to filing this lawsuit.

5.10    Defendant has engaged in a single continuous course of conduct of discrimination against Plaintiff because of his age with the intent destroy Plaintiff's career and cause him to suffer financial damages.

5.11     Such discrimination has caused Plaintiff to suffer future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

5.12    Defendant acted with intentional malice or with reckless indifference to Plaintiff's

protected rights.  Such discrimination constitutes gross, wanton, reckless, and/or intentional violation of Plaintiff's rights under Chapter 21.  Plaintiff is therefore also entitled to recover punitive damages in a sum which is in excess of the minimum jurisdictional limit of this Court.  Plaintiff is also entitled to recover all costs of court and attorneys' fees.

## VI.

## Second Count

## Disability Discrimination In Violation of Chapter 21 of Texas Labor Code

6.01    The foregoing paragraphs of this Petition are incorporated in this Count by reference as if set forth at length herein.

6.02    Defendant A&M Commerce employs at least fifteen employees and is an employer within the meaning of the Texas Human Rights Act.

6.03    Conditions precedent to filing this action for discrimination under Texas state law have been met.  Plaintiff timely filed his charge of discrimination on the basis of disability with the Texas Commission on Human Rights.  Plaintiff filed the instant action more than 180 days after the filing of the charge.

6.04    Plaintiff suffered a chronic vision impairment that constitutes an essential life function.

6.05    Plaintiff was still able to perform his job with a reasonable accommodation.

6.06    Despite Plaintiff's repeated requests, Defendant failed to accommodate Plaintiff's actual and perceived disability and in doing so violated the Texas Human Rights Act, Texas Labor Code §21.001 *et seq*, by discharging Plaintiff and/or discriminating against Plaintiff in connection with compensation, terms, and conditions or privileges of employment because of Plaintiff's disability.

6.07    Defendant has engaged in a single continuous course of conduct of discrimination against Plaintiff because of disability in order to destroy Plaintiff, his career, and his personal life.

6.08    Such discrimination by Defendant against Plaintiff was intentional.  Accordingly, Plaintiff is entitled to recover damages from Defendant for lost wages from teaching opportunities that Plaintiff could have otherwise performed but for her mandatory administrative leave, front pay, promotional opportunities for which he would have been otherwise eligible, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Further, this discrimination was done by Defendant with malice or with reckless indifference to Plaintiff's state-protected rights.  Plaintiff therefore is also entitled to recover punitive damages in a sum which is in excess of the minimum jurisdictional limit of this Court. Plaintiff is also entitled to recover all costs of court, attorneys' fees, and expert fees as allowed by Texas Labor Code Ann. §21.259.

## VII.

### Third Count

### National Origin Discrimination in Violation of Chapter 21 of the Texas Labor Code

7.01    The foregoing paragraphs of this Petition are incorporated in this Count by reference as if set forth at length herein.

7.02    Defendant A&M Commerce employs at least fifteen employees and is an employer within the meaning of the Texas Human Rights Act.

7.03    Conditions precedent to filing this action for discrimination under Texas state law have been met.  Plaintiff timely filed his charge of discrimination on the basis of national origin with the Texas Commission on Human Rights.  Plaintiff filed the instant action more than 180 days after the filing of the charge.

018

7.04     Plaintiff's national origin is Palestinian-Arabic. Because of his national origin, Muslim Plaintiff suffered humiliation, the loss of several job opportunities, and was unfairly denied tenure and employment on the basis for his national origin.

7.05     Despite Plaintiff's superior job performance, work experience and repeated requests for consideration for these positions, Defendant failed to consider Plaintiff for several job openings and unfairly revised Plaintiff's job evaluation in order to prevent Plaintiff from attaining tenure and ultimately terminate his employment. In doing so, Defendant violated the Texas Human Rights Act, Texas Labor Code §21.001 *et seq*, by discharging Plaintiff and/or discriminating against Plaintiff in connection with compensation, terms, and conditions or privileges of employment because of Plaintiff's national origin.

7.06     Defendant has engaged in a single continuous course of conduct of discrimination against Plaintiff because of his national origin in order to destroy Plaintiff, his career, and his personal life.

7.07     Such discrimination by Defendant against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendant for lost wages from teaching opportunities that Plaintiff could have otherwise performed but for her mandatory administrative leave, front pay, promotional opportunities for which he would have been otherwise eligible, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Further, this discrimination was done by Defendant with malice or with reckless indifference to Plaintiff's state-protected rights. Plaintiff therefore is also entitled to recover punitive damages in a sum which is in excess of the minimum jurisdictional limit of this Court. Plaintiff is also entitled to recover all costs of court, attorneys' fees, and expert fees as allowed by Texas Labor Code Ann. §21.259.

# VIII.

## Fourth Count

## Retaliation In Violation of Chapter 21 of Texas Labor Code

8.01     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs and incorporates the same as if set forth herein at length.

8.02     Plaintiff is an employee within the meaning of Title VII.

8.03     Defendant is an employer within the meaning of Title VII.  42 U.S.C. § 2000e(b).

8.04     Plaintiff timely filed with the Texas Human Rights Commission a charge of discrimination for retaliation against Defendant

8.05.    Plaintiff received Notices of the Right to Sue from the Texas Workforce Commission within sixty (60) days of the filing of this Complaint.

8.06     Plaintiff made repeated inquiries as to why younger individuals were being assigned to projects for which Plaintiff was eligible and in which Plaintiff had also expressed an interest to Defendant.

8.07     Despite Plaintiff's inquiries and reports of disparate treatment, Defendant took no action to assist Plaintiff and in fact retaliated against Plaintiff by down grading Plaintiff's employment evaluation and thereafter terminating Plaintiff's employment, thereby preventing plaintiff from qualifying for tenure despite recent recommendation by the College Tenure Committee, and intentionally excluding Plaintiff's valuable experience and awards from consideration by the tenure committee, in order to promote younger, who are significantly less qualified, less educated and less experienced.

8.08     As  a result of Defendants' unlawful employment practices, Plaintiff has suffered damages including lost wages, front pay, past and future pecuniary losses, emotional pain and

suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and seeks to recover for those sums.

8.09    Defendant's retaliatory action was intentional, willful and malicious so that Plaintiff is entitled to recovery of exemplary damages.

## IX.

### Fifth Count

### Attorneys' Fees

9.01    Plaintiff incorporates the foregoing paragraphs of this Complaint as if set forth at length verbatim.

9.02    The preparation and filing of this Complaint has necessitated the hiring of attorneys. Plaintiff seeks to recover reasonable and necessary attorneys' fees as allowed by Chapter 21 of the Texas Labor Code.

## X.

### JURY TRIAL DEMANDED

10.01   Plaintiff demands trial by a jury of all claims as allowed by statute and common law.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein and that upon final trial Plaintiff have and recover the following relief against Defendants:

1)      Judgment for actual damages in the amount of past and future lost earnings and benefits and damages to past and future earnings capacity and past and future medical counseling expenses;

2)      Judgment for back pay and front pay as allowed by law;

3)      Judgment for past and future pecuniary losses, emotional pain and suffering,

inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

4)     Damages for past and future mental anguish, emotional distress, and physical

distress;

5)     Reinstatement to full tenured position with full seniority;

6)     Exemplary damages in an amount to be determined by the trier of fact;

7)     Prejudgment and post-judgment interest at the maximum legal rate;

8)     Attorneys' fees;

9)     Expert fees;

10)    All costs of court; and

11)    Such other and further relief to which Plaintiff may be justly entitled.

Date: May 23, 2022                                    Respectfully submitted,

                                                      **KILGORE & KILGORE, PLLC**

                                                      By: /s/ Nicholas A. O'Kelly
                                                          Nicholas A. O'Kelly
                                                          State Bar No. 15241235
                                                          nao@kilgorelaw.com
                                                          3109 Carlisle Street, Suite 200
                                                          Dallas, TX 75204
                                                          (214) 969-9099 - Telephone
                                                          (214) 953-0133 - Fax

                                                      **ATTORNEYS FOR PLAINTIFF**
                                                      **MAHDI YAQUB**

FILED
6/6/2022 5:56 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Christi Underwood DEPUTY

**KILGORE LAW**

**Nicholas A. O'Kelly**
**nao@kilgorelaw.com**
**214-379-0827 direct**
**214-379-0848 fax**

June 6, 2022

***Via E-File***

Clerk of Court
298th Judicial District Court
Goerge L. Allen Sr. Courts Building
600 Commerce Street, 8th Floor
Dallas, TX 75202

    RE: Cause No. DC-22-05483; Mahdi Yaqub v. Texas A&M Commerce, a Division of Texas
      A&M University - Request for Citation

Dear Court Clerk,

    This is a request to please issue a Citation in the above-referenced matter to Defendant in this case, Texas A&M Commerce, a Division of Texas A&M University.  We have paid the fee with this filing.

    If it is possible, please email the citation to my paralegal, Susan Witt, at saw@kilgorelaw.com.  Thank you.

        Sincerely,

        Nicholas A. O'Kelly

FORM NO. 353-3 CITATION

# THE STATE OF TEXAS

# CITATION

To:   **TEXAS A&M COMMERCE, A DIVISION OF TEXAS A&M UNIVERSITY**
      **1230 TAMU**
      **COLLEGE STATION TX  77483**

_____

**No.: DC-22-05483**

_____

GREETINGS:
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk.  Find out more at TexasLawHelp.org. Your answer should be addressed to the clerk of the **298th District Court** at 600 Commerce Street, Dallas, Texas 75202.

**MAHDI YAQUB**
**vs.**
**TEXAS A&M COMMERCE**

_____

**ISSUED**
**on this the 22nd day of June, 2022**

Said Plaintiff being **MAHDI YAQUB**

Filed in said Court  **23rd day of May, 2022** against

**TEXAS A&M COMMERCE, A DIVISION OF TEXAS A&M UNIVERSITY**

For Suit, said suit being numbered **DC-22-05483,** the nature of which demand is as follows:
Suit on **EMPLOYMENT** etc. as shown on said petition, a copy of which accompanies this citation.  If this citation is not served, it shall be returned unexecuted.

**FELICIA PITRE**
**Clerk District Courts,**
**Dallas County, Texas**

By: **KARI MALONE**, Deputy

_____

**Attorney for Plaintiff**
**NICHOLAS ALBAN O'KELLY**
Attn KILGORE & KILGORE PLLC
3109 CARLISLE ST
DALLAS TX  75204-2471
214-379-0827
NAO@KILGORELAW.COM
**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office  **on this the 22nd day of June, 2022**

ATTEST: FELICIA PITRE,
Clerk of the District Courts of Dallas County, Texas

By _Kari Maloe_ , Deputy
**KARI MALONE**



**OFFICER'S RETURN**

Cause No. DC-22-05483

Court No.: 298th District Court

Style: MAHDI YAQUB
 vs.
TEXAS A&M COMMERCE

Came to hand on the _____ day of _____, 20_____, at _____ o'clock _____.M.
Executed at _____, within the County of _____ at
_____ o'clock _____.M. on the _____ day of_____, 20_____,
by              delivering              to              the              within              named

_____

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by me in serving such process was _____miles and my fees are as follows:      To certify which witness my hand.

| | | |
|---|---|---|
| For serving Citation | $_____ | _____ |
| For mileage | $_____ | of_____ County, _____ |
| For Notary | $_____ | By_____ Deputy |

(Must be verified if served outside the State of Texas.)
Signed and sworn to by the said_____ before me this_____ day of _____,
20_____, to certify which witness my hand and seal of office.

_____
Notary Public_____ County_____

FILED
6/24/2022 3:08 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
SADAF RAJPUT DEPUTY

FORM NO. 353-3—CITATION

# THE STATE OF TEXAS

RETURN / AFFIDAVIT
PROOF / ATTACHED

**ESERVE**

# CITATION

**To:** TEXAS A&M COMMERCE, A DIVISION OF TEXAS A&M UNIVERSITY
**1230 TAMU**
**COLLEGE STATION TX 77483**

**No.: DC-22-05483**

**GREETINGS:**

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org. Your answer should be addressed to the clerk of the **298th District Court** at 600 Commerce Street, Dallas, Texas 75202.

Said Plaintiff being **MAHDI YAQUB**

Filed in said Court **23rd day of May, 2022** against

## TEXAS A&M COMMERCE, A DIVISION OF TEXAS A&M UNIVERSITY

For Suit, said suit being numbered **DC-22-05483,** the nature of which demand is as follows:
Suit on **EMPLOYMENT** etc. as shown on said petition, a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office **on this the 22nd day of June, 2022**

ATTEST: FELICIA PITRE,
Clerk of the District Courts of Dallas County, Texas

By _____, Deputy
**KARI MALONE**



**MAHDI YAQUB**
**vs.**
**TEXAS A&M COMMERCE**

**ISSUED**
**on this the 22nd day of June, 2022**

**FELICIA PITRE**
**Clerk District Courts,**
**Dallas County, Texas**

By: **KARI MALONE**, Deputy

**Attorney for Plaintiff**
**NICHOLAS ALBAN O'KELLY**
Attn KILGORE & KILGORE PLLC
3109 CARLISLE ST
DALLAS TX 75204-2471
214-379-0827
NAO@KILGORELAW.COM
**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

**OFFICER'S RETURN**

Cause No. DC-22-05483

Court No.: 298th District Court

Style: MAHDI YAQUB
vs.
TEXAS A&M COMMERCE

Came to hand on the _____ 22 _____ day of ___June___ , 20 22 , at 5:38 o'clock P .M.
Executed at 301 Tarrison 4th Floor , College Station TX , within the County of ___Brazos___ at
1:45 o'clock P .M. on the 23 day of June , 20 22 ,
by              delivering              to              the              within              named
___Texas A&M Commerce , A Division of Texas A&M University   via   Elinore T. Tarson Assistant General Counsel___

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:   To certify which witness my hand.

For serving Citation $_____        *LCRV* Psc 10361 Exp 4/30/24
For mileage $_____        of ___Brazos___ County, TX
For Notary $_____        By ___Luke Purcell / Authorized Person___   ~~Deputy~~
                                    (Must be verified if served outside the State of Texas.)
Signed and sworn to by the said ___Luke Purcell___ before me this 24 day of June .
                        20 22 , to certify which witness my hand and seal of office.

[Notary seal: JAMIE ANDRUS SCANLIN, Notary Public, State of Texas, Comm. Expires 05-02-2026, Notary ID 125878406]

Notary Public, ___Brazos___ County ___Texas___

027

FILED
7/18/2022 10:02 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Loaidi Grove DEPUTY

CAUSE NO. DC-22-05483

| | | |
|---|---|---|
| MAHDI YAQUB, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | DALLAS COUNTY, TEXAS |
| TEXAS A&M UNIVERSITY -COMMERCE, | § | |
| A DIVISION OF TEXAS A&M | § | |
| UNIVERSITY SYSTEM | § | |
| Defendant. | § | |
| | § | 298TH JUDICIAL DISTRICT |

## DEFENDANTS' ORIGINAL ANSWER

Defendant Texas A&M University - Commerce, a Division of Texas A&M University System ("TAMU Commerce"), files its Original Answer to Plaintiff's Petition, and in their defense respectfully show:

## I.  SPECIAL EXCEPTIONS

Defendant specially excepts to Plaintiff's Petition for failing to state a maximum amount of damages.  The allegations of damages in the Petition are unliquidated in nature and fail to state with specificity the maximum amount of damages claimed by Plaintiff.  Pursuant to Texas Rule of Civil Procedure 47, Plaintiff must amend his Petition so as to specify the maximum amount claimed.[1]

---

[1] *See Horizon v. Auld*, 34 S.W.3d 887, 896-897 (Tex. 2000).

## II.  GENERAL DENIAL

Pursuant to Texas Rule of Civil Procedure 92, Defendant generally denies, each and every, all and singular, the allegations contained in Plaintiff's Petition and demand strict proof thereof as allowed under the laws of the State of Texas.  By this general denial, Defendant would require Plaintiff to prove every fact to support the claims asserted in his Petition by a preponderance of the evidence.

## III.  DEFENSES

Pleading further, Defendant hereby asserts the following affirmative defenses to which they may be entitled and reserves the right to supplement or amend them throughout the development of the case:

### FIRST DEFENSE
### Failure to State a Cognizable Claim

Plaintiff failed to state claims upon which relief may be granted. Defendant further states that any and all employment actions regarding the Plaintiff were taken for legitimate, non-retaliatory reasons.

### SECOND DEFENSE
### Sovereign Immunity

Sovereign immunity from suit bars any and all of Plaintiff's claims to which that defense may apply.  Sovereign immunity from liability bars Plaintiff's recovery to the extent it applies. Plaintiff has not alleged any waiver of sovereign immunity, nor has he complied with the provisions of any statute that would serve as a limited waiver of immunity.

### THIRD DEFENSE
### Standing

Plaintiff lacks standing to assert one or more of the claims asserted against Defendant.

**FOURTH DEFENSE**
**Limitations**

To the extent applicable, Defendant asserts the defense of limitations for any of Plaintiff's claims asserted after the expiration of the applicable statute of limitation period and for any failures to timely comply with any other filing deadlines required by law.

**FIFTH DEFENSE**
**Mitigation and Offset**

Alternatively, Plaintiff's own acts and/or omissions caused or contributed to Plaintiff's alleged damages, if any. Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff has failed to mitigate any recoverable damages he may have sustained, and/or any damages must be reduced and/or offset by the amount which Plaintiff may be entitled had he mitigated his claimed damages.

**SIXTH DEFENSE**
**Limits of Compensatory/Punitive/Exemplary Damages**

Alternatively, Defendants plead the statutorily prescribed limits on compensatory, punitive, and exemplary damages under applicable law.

**SEVENTH DEFENSE**
**One Remedy**

Alternatively, Plaintiff cannot recover damages under multiple or different theories and causes of action for the same or similar acts.  Plaintiff is entitled to only one remedy for his claims.

**IV. RIGHT TO AMEND**

Defendant reserves the right to amend its Answer to plead additional defenses as those defenses may become known.

## V.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays that Plaintiff take nothing by reason of his actions against Defendant, and Defendant be awarded its reasonable and necessary attorney's fees and costs of court, and for such other and further relief to which Defendant may show itself to be justly entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief - General Litigation Division

*/s/ Jeffrey E. Farrell*
JEFFREY E. FARRELL
Texas Bar No. 00787453
Assistant Attorney General
Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2120/Fax: (512) 320-0667
jeffrey.farrell@oag.texas.gov

**ATTORNEY FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing document was served upon the following counsel of record *via* the E-Service by File and Serve Texas on the 18th day of July, 2022:

Nicholas A. O'Kelly
Kilgore & Kilgore PLLC
3141 Hood Street, Suite 500
Dallas, Texas 75219
<u>nao@kilgorelaw.com</u>

*/s/ Jeffrey E. Farrell*
JEFFREY E. FARRELL
Assistant Attorney General

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Laura Hendrix on behalf of Jeffrey Farrell
Bar No. 787453
Laura.Hendrix@oag.texas.gov
Envelope ID: 66398582
Status as of 7/18/2022 3:08 PM CST
Associated Case Party: MAHDI YAQUB

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| NICHOLAS ALBANO'KELLY | | NAO@KILGORELAW.COM | 7/18/2022 10:02:03 AM | SENT |

**033**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Laura Hendrix on behalf of Jeffrey Farrell
Bar No. 787453
Laura.Hendrix@oag.texas.gov
Envelope ID: 66398582
Status as of 7/18/2022 3:08 PM CST
Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jeffrey Farrell | | jeffrey.farrell@oag.texas.gov | 7/18/2022 10:02:03 AM | SENT |
| Laura Hendrix | | laura.hendrix@oag.texas.gov | 7/18/2022 10:02:03 AM | SENT |

034